UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**Ari Teman**

Plaintiffs,

v.

**Joseph Soleimani, Samuel Taub, Abi Goldenberg, Leon Goldenberg, Avi Goldenberg, Benjamin Soleimani, Abraham Soleimani, Bonnie Soon-Osberger, Gina Hom, Crystal Real Estate Management, ABJ Properties, MVI Systems LLC, MVI Industries LLC, Goldmont Properties, Jacob Litchfield, Paul Engelmayer, Simcha D. Schonfeld, Koss & Schonfeld, LLP, Adam Engel, and John Does 1–20**

Defendants.

**Case No.:** [To Be Assigned]

## COMPLAINT

**Plaintiffs**, Ari Teman hereby files this Complaint against Defendants Joseph Soleimani, Samuel Taub, Abi Goldenberg, Leon Goldenberg, Avi Goldenberg, Benjamin Soleimani, Abraham Soleimani, Bonnie Soon-Osberger, Gina Hom, Crystal Real Estate Management, ABJ Properties, MVI Systems LLC, MVI Industries LLC, Goldmont Properties, Jacob Litchfield, and John Does 1–20, and Paul Engelmayer (collectively, "Defendants"), and allege as follows:

### INTRODUCTION

1. This action arises from a coordinated scheme by Defendants to obstruct justice, perpetrate fraud, steal trade secrets, breach contractual obligations, and engage in tortious conduct, including battery, unlawful detainment, and intentional infliction of emotional distress, against Plaintiffs Ari Teman and GateGuard, Inc. in connection with the criminal case *United States v. Teman*, Case No. 1:19-cr-00696-PAE (S.D.N.Y.), and related civil actions.

2. Defendants knowingly withheld exculpatory and impeachment evidence responsive to subpoenas, misrepresented material facts, engaged in fraudulent conveyances, and stole trade secrets and assets owned by Teman individually and through his corporations, including GateGuard, to harm Plaintiffs and prevent Teman from pursuing litigation against them.

3. Defendants' actions were designed to financially ruin Teman, obstruct his access to justice, and cause severe emotional distress, including through physical and psychological harm during his arrest and detainment related to *United States v. Teman*.

4. As a result of Defendants' actions, Plaintiffs have suffered significant damages, including but not limited to legal fees and expenses incurred in pursuing motions, appeals, and discovery to uncover withheld evidence, loss of proprietary trade secrets, reputational harm, lost business opportunities, financial losses, emotional distress, and physical harm.

---

**PARTIES**

5. Plaintiff **Ari Teman** is an individual residing in New York, New York, and the founder and principal of GateGuard, Inc.

6. Plaintiff **GateGuard, Inc.** is a corporation organized under the laws of New York, engaged in the business of providing smart intercom systems to residential and commercial properties.

7. Defendant **Joseph Soleimani** is an individual residing in New York, New York, and a principal of ABJ Properties.

8. Defendant **Samuel Taub** is an individual residing in New York, New York, and associated with MVI Systems LLC and/or MVI Industries LLC.

9. Defendants **Abi Goldenberg**, **Leon Goldenberg**, and **Avi Goldenberg** are individuals residing in New York, New York, and principals or officers of Goldmont Properties.

10. Defendants **Benjamin Soleimani** and **Abraham Soleimani** are individuals residing in New York, New York, and associated with ABJ Properties.

11. Defendants **Bonnie Soon-Osberger** and **Gina Hom** are individuals residing in New York, New York, formerly associated with 18 Mercer Equities.

12. Defendant **Crystal Real Estate Management** is a business entity operating in New York, New York, involved in property management.

13. Defendant **ABJ Properties** is a business entity operating in New York, New York, engaged in real estate management.

14. Defendants **MVI Systems LLC** and **MVI Industries LLC** are business entities operating in New York, New York, engagedJ in intercom system services and competitors to GateGuard.

15. Defendant **Goldmont Properties** is a business entity operating in New York, New York, engaged in real estate management.

16. Defendant **Jacob Litchfield** is an individual residing in New York, New York, associated with Goldmont Properties or other Defendants.
17. Defendants **John Does 1–20** are unknown individuals or entities who aided and abetted the named Defendants in their fraudulent conveyance of properties under contract with GateGuard to obstruct Plaintiffs' access to exculpatory evidence.
18. **Defendant Paul Engelmayer** is an investor, attorney, and Obama-appointed district judge facing two (2) articles of impeachment before Congress, residing in New York,
19. Defendant **Simcha D. Schonfeld** is an individual residing in New York, New York, an attorney and co-founder of Koss & Schonfeld, LLP, who represented or advised Defendants Soleimani, Goldenberg, and others in civil cases related to Teman's business.
20. Defendant **Koss & Schonfeld, LLP** is a law firm organized under the laws of New York, with its principal place of business at 160 Broadway, 8th Floor, New York, New York 10038, which employed or partnered with Simcha D. Schonfeld in representing Defendants in civil cases related to Teman's business.
21. Defendant **Adam Engel** is an individual residing in New York, New York, an attorney associated with or affiliated with Defendants in civil cases related to Teman's business, who colluded with other Defendants to violate discovery obligations.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiffs and Defendants, and the amount in controversy exceeds $75,000.
19. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367(a).
20. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claifms occurred in this District.

## FACTUAL ALLEGATIONS

21. On December 23, 2019, Plaintiff Teman, as a defendant in *United States v. Teman*, issued subpoenas to Defendants Joseph Soleimani, Bonnie Soon-Osberger, and Gina Hom, requiring production of documents and communications related to GateGuard, its employees, and officers, including Teman.

22. Defendants Soleimani, Soon-Osberger, and Hom willfully failed to produce responsive documents, including communications and documents that were exculpatory and impeaching as to the allegations in *United States v. Teman*.

23. Specifically, Joseph Soleimani withheld documents and communications with MVI Systems LLC, MVI Industries LLC, and Goldmont Properties, including:

    a. Communications showing Soleimani knew his internet connection caused GateGuard system outages, contradicting his testimony that GateGuard's systems were faulty (Exhibit 1 (Pages 15, 20–22)).
    b. Evidence of Soleimani's pattern of non-payment to intercom vendors, including a debt of over $13,000 to MVI, using similar excuses as those used against GateGuard (Exhibit 1 (Page 15)).
    c. Communications demonstrating Soleimani's breach of an exclusive agreement with GateGuard and his role as a competitor through a revenue-sharing agreement with MVI (Exhibit 1 (Pages 6, 10)).
    d. Discussions of Teman's arrest and *United States v. Teman* with MVI and Goldmont, including efforts to avoid a paper trail by moving conversations to phone calls (Exhibit 1 (Pages 6, 22)).
    e. Evidence that Soleimani reviewed and understood GateGuard's Terms and Conditions before ordering systems, contradicting his perjured testimony (Exhibit 1 (Pages 13–14)).

24. Defendants Soon-Osberger and Hom, formerly of 18 Mercer Equities, withheld emails showing:

    a. Teman explicitly warned clients of fees before they were incurred (Exhibit 1 (Page 9)).
    b. 18 Mercer Equities' board members, including Margaret Crimmins, acknowledged they were "legally liable" for GateGuard's fees (Exhibit 1 (Page 8)).

25. Defendants Leon Goldenberg, Abi Goldenberg, Avi Goldenberg, and Goldmont Properties conspired with Soleimani and others to withhold evidence and interfere with Teman's criminal defense, with Leon Goldenberg admitting in a deposition that he hoped Teman's criminal case would prevent GateGuard's civil lawsuits (Exhibit 1 (Page 7)).

26. Defendants Samuel Taub, MVI Systems LLC, MVI Industries LLC, Joseph Soleimani, Benjamin Soleimani, ABJ Properties, Leon Goldenberg, and Abi Goldenberg engaged in the theft of trade secrets and proprietary assets owned by Teman individually and GateGuard, including but not limited to:

    a. Accessing and misappropriating proprietary information from GateGuard devices in exchange for discounts and revenue-sharing agreements (Exhibit 1 (Page 6)).

    b. Using Teman's and GateGuard's confidential designs, software, and operational protocols to develop competing systems, in violation of GateGuard's exclusive agreements and intellectual property rights.

27. Defendants Joseph Soleimani, Benjamin Soleimani, Abraham Soleimani, ABJ Properties, and John Does 1–20 fraudulently conveyed properties under contract with GateGuard to third parties or entities to obstruct Plaintiffs' access to exculpatory evidence and hinder enforcement of GateGuard's contractual rights.

28. Defendants conspired to harm Teman personally by orchestrating false allegations leading to his arrest and prosecution in *United States v. Teman*, with the explicit intent to financially ruin him and prevent his ability to pursue civil litigation against them, as evidenced by Leon Goldenberg's deposition (Exhibit 1 (Page 7)).

29. During Teman's arrest related to *United States v. Teman*, Defendants' actions contributed to unlawful detainment and physical harm, including excessive force or mistreatment during his apprehension, causing physical injuries and severe emotional distress.

30. The withheld evidence would have demonstrated:

        a. Teman's lack of mens rea to commit fraud, as he clearly communicated GateGuard's Terms and Conditions to clients (Exhibit 1 (Page 9)).

        b. Defendants' perjury regarding their knowledge of GateGuard's Terms and the functionality of its systems (Exhibit 1 (Pages 13–14, 15, 20–22)).

        c. A pattern of fraudulent non-payment by Soleimani and others, undermining their credibility (Exhibit 1 (Page 15)).

        d. No financial damage to Bank of America, as proper chargeback handling by Signature Bank and others would have prevented any loss.

31. Defendants' actions were extreme and outrageous, causing Teman severe emotional distress through false accusations, wrongful prosecution, and physical harm during his arrest and detainment.

32. As a direct result of Defendants' actions, Plaintiffs incurred significant legal fees and expenses in filing motions, appeals, and pursuing discovery to uncover withheld evidence, which would not have been necessary had Defendants complied with their legal obligations.

33. Defendants Samuel Taub, Avi Goldenberg, Leon Goldenberg, Abi Goldenberg, and John Does 1–20 engaged in a campaign of harassment and defamation against Teman by:

        a. Setting up fake email accounts to impersonate Teman or others, sending false and damaging communications to rabbis and community leaders from whom Teman and his family were seeking support for his legal defense and advocacy efforts.

   b. Posting defamatory statements in internet comments and other public forums, falsely accusing Teman of criminal conduct, fraud, and professional incompetence, with the intent to harm his reputation and undermine his fundraising efforts for legal defense.

   c. Making false statements to individuals and organizations, including potential donors and supporters, claiming Teman's actions in *United States v. Teman* were criminal and that his business, GateGuard, was unreliable, thereby discouraging financial support for his defense.

34. Defendants' harassment and defamatory actions were intended to isolate Teman, damage his standing as a recognized community leader, and prevent him from securing funds needed for legal defense and advocacy, causing significant reputational harm and emotional distress.

35. Defendants' actions caused further damages, including loss of trade secrets, reputational harm to Teman and GateGuard, lost business opportunities, financial losses from breaches of contract, and physical and emotional harm to Teman.

36. Defendants Simcha D. Schonfeld, Koss & Schonfeld, LLP, and Adam Engel colluded with Samuel Taub, the Soleimanis (Joseph, Benjamin, and Abraham Soleimani), and the Goldenbergs (Leon, Abi, and Avi Goldenberg) to violate subpoenas and discovery deadlines in civil cases, including *GateGuard, Inc. v. MVI Systems LLC*, 1:19-cv-02472 (S.D.N.Y.), and *GateGuard, Inc. v. Goldmont Realty Corp.*, 1:20-cv-01609 (S.D.N.Y.), by withholding and concealing exculpatory evidence, such as communications showing Defendants' knowledge of Teman's terms and their own breaches, which would have exonerated Teman in the related criminal case.

37. This collusion continues to harm Teman by denying him access to evidence critical to his defense and civil enforcement actions, prolonging his wrongful conviction and financial ruin, and forcing him to incur additional legal fees to compel compliance.

38. Judge Paul A. Engelmayer, presiding over *United States v. Teman,* has colluded ex parte e Defendants by failing to disclose or recuse himself from improper communications and by refusing, for more than four years since the filing of the motion for sanctions on January 6, 2022 (Docket No. 295), to consider the exculpatory evidence uncovered and, despite his authority and obligation to do so under Federal Rule of Criminal Procedure 33 and 28 U.S.C. § 2255.

39. . Instead of addressing the evidence—including witness statements showing collusion by Joseph Soleimani, Leon Goldenberg, Abi Goldenberg, and others, as well as Bonnie Soon-Osberger and Gina Hom—to hide documents, Judge Engelmayer has threatened reporters who questioned his inaction, an act outside his judicial authority and in violation of judicial ethics under 28 U.S.C. § 455 and Canon 3 of the Code of Conduct for United States Judges.

## CAUSES OF ACTION

**Count I: Tortious Interference with Judicial Proceedings (All Defendants)**

36. Plaintiffs incorporate by reference the allegations in paragraphs 1–35.
37. Defendants knowingly and intentionally interfered with Plaintiff Teman's right to a fair judicial proceeding in *United States v. Teman* by withholding exculpatory and impeachment evidence responsive to subpoenas, including communications showing Teman's clear disclosure of GateGuard's Terms and Conditions (Exhibit 1 (Page 9)), Soleimani's knowledge of system outages due to his internet connection (Exhibit 1 (Pages 15, 20–22)), and Defendants' pattern of non-payment (Exhibit 1 (Page 15)).
38. Defendants' actions were intended to obstruct Teman's defense and secure his wrongful conviction, thereby preventing him from pursuing civil litigation against them, as evidenced by Leon Goldenberg's deposition (Exhibit 1 (Page 7)).
39. Under New York law, Defendants' willful withholding of evidence constitutes tortious interference with judicial proceedings, as it undermined the integrity of the judicial process and deprived Teman of a fair trial.
40. As a result, Plaintiffs suffered damages, including legal fees, expenses, reputational harm, and emotional distress.

**Count II: Fraud (All Defendants)**

41. Plaintiffs incorporate by reference the allegations in paragraphs 1–35.
42. Defendants made the following false representations and material omissions with the intent to deceive Plaintiffs and the court in *United States v. Teman*, causing Plaintiffs to rely on these misrepresentations to their detriment:

> a. **Joseph Soleimani's False Testimony** (When: During trial in *United States v. Teman*, approximately January–February 2020; Where: Southern District of New York courtroom; What and How False): Soleimani testified that GateGuard's systems did not work and that he was unaware of GateGuard's Terms and Conditions. This was false, as Soleimani knew his internet connection caused system outages (Exhibit 1 (Pages 15, 20–22)) and had reviewed and discussed GateGuard's Terms before ordering systems (Exhibit 1 (Pages 13–14)). These misrepresentations misled the jury to believe Teman's actions were fraudulent, when Soleimani's own actions caused the issues and he was fully aware of the contractual terms.
>
> b. **Joseph Soleimani's Omission of Communication**s (When: January 15, 2020, in response to December 23, 2019 subpoena; Where: Documents provided to Teman's defense counsel; What

and How False): Soleimani failed to produce responsive WhatsApp chats with Samuel Taub and others discussing Teman's arrest and *United States v. Teman* (Exhibit 1 (Pages 6, 22)), which were required by the subpoena. This omission concealed Soleimani's collusion with MVI and Goldmont to obstruct Teman's defense and his knowledge of GateGuard's Terms, deceiving Plaintiffs into believing no such communications existed.

c. **Bonnie Soon-Osberger and Gina Hom's Omission of Emails (When: January 2020, in response to December 23, 2019 subpoenas; Where: Documents provided to Teman's defense counsel; What and How False)**: Soon-Osberger and Hom failed to produce emails showing Teman warned 18 Mercer Equities of fees before they were incurred (Exhibit 1 (Page 9)) and that board member Margaret Crimmins acknowledged 18 Mercer's legal liability for those fees (Exhibit 1 (Page 8)). These omissions misled the defense and the court into believing Teman hid the terms, when he had clearly communicated them.

d. **Leon Goldenberg's False Statements** (When: During a sworn deposition, date unspecified but post-trial; Where: In a civil proceeding related to *GateGuard, Inc. v. Goldmont Realty Corp.*; What and How False)**: Goldenberg stated he hoped Teman's criminal case would prevent GateGuard's lawsuits (Exhibit 1 (Page 7)), implying he provided truthful information to the Government. This was false, as Goldenberg conspired with Soleimani and others to withhold evidence, concealing their collusion to harm Teman (Exhibit 1 (Pages 6, 10)).

e. **Abi Goldenberg's False Statements** (When: During communications with the Government, date unspecified but pre-trial; Where: In interviews with prosecutors; What and How False): Abi Goldenberg claimed he only provided truthful information about Teman and GateGuard (Exhibit 1 (Page 10)). This was false, as he colluded with Soleimani and others to withhold evidence and misrepresent GateGuard's system functionality, intending to harm Teman's defense.

43. Defendants made these misrepresentations and omissions knowingly or with reckless disregard for their falsity, intending to deceive the court and Teman's defense team to secure Teman's conviction and prevent his civil litigation against them.

44. Plaintiffs justifiably relied on Defendants' representations and omissions, as they were unaware of the withheld evidence during the trial, causing them to incur significant legal fees, expenses, and other damages in pursuing motions and appeals to uncover the truth.

45. As a result, Plaintiffs suffered damages, including legal fees, expenses, reputational harm, financial losses, and emotional distress.

## Count III: Fraudulent Conveyance (Joseph Soleimani, Benjamin Soleimani, Abraham Soleimani, ABJ Properties, and John Does 1–20)

46. Plaintiffs incorporate by reference the allegations in paragraphs 1–35.
47. Defendants Joseph Soleimani, Benjamin Soleimani, Abraham Soleimani, ABJ Properties, and John Does 1–20 fraudulently conveyed properties under contract with GateGuard to third parties or entities to obstruct Plaintiffs' access to exculpatory evidence and hinder enforcement of GateGuard's contractual rights.
48. These conveyances were made with the intent to defraud Plaintiffs and were executed without fair consideration, in violation of New York Debtor and Creditor Law § 270 et seq.
49. As a result, Plaintiffs suffered damages, including legal fees, expenses, and the inability to enforce contractual obligations.

## Count IV: Breach of Contract (Joseph Soleimani, ABJ Properties, Goldmont Properties, Bonnie Soon-Osberger, Gina Hom, Crystal Real Estate Management)

50. Plaintiffs incorporate by reference the allegations in paragraphs 1–35.
51. Defendants Joseph Soleimani, ABJ Properties, Goldmont Properties, Bonnie Soon-Osberger, Gina Hom, and Crystal Real Estate Management entered into contracts with GateGuard, governed by GateGuard's Terms and Conditions.
52. Defendants breached these contracts by failing to pay agreed-upon fees, breaching exclusivity agreements, and engaging in unauthorized use of GateGuard's proprietary information.
53. As a result, GateGuard suffered financial losses, including unpaid fees and lost business opportunities.

## Count V: Tortious Interference with Contract (Samuel Taub, MVI Systems LLC, MVI Industries LLC, Abi Goldenberg, Leon Goldenberg, Avi Goldenberg, Jacon Litchfield)

54. Plaintiffs incorporate by reference the allegations in paragraphs 1–35.
55. Defendants Samuel Taub, MVI Systems LLC, MVI Industries LLC, Abi Goldenberg, Leon Goldenberg, Avi Goldenberg, and Jacon Litchfield intentionally interfered with GateGuard's contracts with ABJ Properties, Goldmont Properties, and 18 Mercer Equities by inducing breaches, including through revenue-sharing agreements and theft of proprietary information.
56. As a result, GateGuard suffered financial losses and lost business opportunities.

**Count VI: Civil Conspiracy (All Defendants)**

57. Plaintiffs incorporate by reference the allegations in paragraphs 1–35.
58. Defendants acted in concert to commit the underlying torts of fraud (Count II), misappropriation of trade secrets (Count VII), harassment (Count XI), and defamation (Count XII), and malicious abuse of process (Count XIII), with the shared objective of causing financial and personal ruin to Plaintiffs and preventing Teman from pursuing civil litigation against them.
59. Specific acts in furtherance of the conspiracy include, but are not limited to:

    a. Joseph Soleimani's false testimony and omission of communications with Samuel Taub and others discussing Teman's arrest and *United States v. Teman* (Exhibit 1 (Pages 6, 22)), intended to deceive the court and obstruct Teman's defense.
    b. Bonnie Soon-Osberger and Gina Hom's withholding of emails showing Teman's clear disclosure of fees and 18 Mercer's acknowledgment of liability (Exhibit 1 (Pages 8–9)), furthering the fraud against Teman.
    c. Leon Goldenberg, Abi Goldenberg, and Goldmont Properties' collusion with Soleimani to withhold evidence and misrepresent GateGuard's system functionality, with the intent to secure Teman's conviction and avoid civil liability (Exhibit 1 (Pages 7, 10)).
    d. Samuel Taub, MVI Systems LLC, MVI Industries LLC, Joseph Soleimani, Benjamin Soleimani, Leon Goldenberg, and Abi Goldenberg's misappropriation of Teman's and GateGuard's trade secrets to develop competing systems, harming Plaintiffs' business (Exhibit 1 (Page 6)).
    e. Samuel Taub, Avi Goldenberg, Leon Goldenberg, Abi Goldenberg, and John Does 1–20's harassment and defamation of Teman through fake emails and false statements to rabbis, in internet comments, and to potential donors, intended to undermine his fundraising efforts and reputation.

60. Defendants' concerted actions caused Plaintiffs to suffer damages, including legal fees, expenses, reputational harm, financial losses from lost trade secrets, and emotional distress.

**Count VII: Misappropriation of Trade Secrets under the Defend Trade Secrets Act (Joseph Soleimani, Benjamin Soleimani, Samuel Taub, ABJ Properties, MVI Systems LLC, MVI Industries LLC, Leon Goldenberg, Abi Goldenberg)**

61. Plaintiffs incorporate by reference the allegations in paragraphs 1–35.
62. Plaintiffs Ari Teman and GateGuard owned valuable trade secrets, including GateGuard's source code, device firmware, installation schematics, and client lists, which were developed by Teman individually

and through GateGuard. These trade secrets derived independent economic value from their confidentiality and were protected by reasonable measures, including confidentiality agreements and exclusive contracts with Defendants.

63. Defendants Joseph Soleimani, Benjamin Soleimani, Samuel Taub, ABJ Properties, MVI Systems LLC, MVI Industries LLC, Leon Goldenberg, and Abi Goldenberg misappropriated these trade secrets, in violation of the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836, by:

    a. Accessing and using Teman's and GateGuard's proprietary information from GateGuard devices without authorization, in exchange for discounts and revenue-sharing agreements with MVI (Exhibit 1 (Page 6)).

    b. Using Teman's and GateGuard's confidential source code, device firmware, installation schematics, and client lists to develop competing intercom systems, in breach of GateGuard's exclusive agreements and intellectual property rights.

64. Defendants acquired these trade secrets through improper means, including unauthorized access to GateGuard devices and collusion with MVI, knowing or having reason to know that the information was confidential and proprietary to Teman and GateGuard.

65. Defendants' misappropriation was willful and malicious, undertaken to harm Teman's and GateGuard's business and gain a competitive advantage.

66. As a result, Plaintiffs suffered damages, including loss of competitive advantage, financial losses, and costs associated with protecting their intellectual property.

**Count VIII: Intentional Infliction of Emotional Distress (All Defendants)**

67. Plaintiffs incorporate by reference the allegations in paragraphs 1–35.
68. Defendants engaged in extreme and outrageous conduct by orchestrating false allegations leading to Teman's arrest and prosecution, withholding exculpatory evidence, and conspiring to financially ruin Teman to prevent his litigation against them.

69. Defendants' actions were intended to cause, and did cause, severe emotional distress to Teman, including anxiety, humiliation, and trauma from his wrongful prosecution and detainment.

70. As a result, Teman suffered severe emotional distress and related damages.

**Count IX: Battery (All Defendants)**

71. Plaintiffs incorporate by reference the allegations in paragraphs 1–35.
72. Defendants' actions in orchestrating Teman's arrest in *United States v. Teman* led to physical contact of a harmful or offensive nature during his apprehension, including excessive force or mistreatment by law enforcement acting on Defendants' false allegations.
73. Defendants intended or knew with substantial certainty that their actions would result in such harmful contact.
74. As a result, Teman suffered physical injuries and emotional distress.

**Count X: Unlawful Detainment (All Defendants)**

75. Plaintiffs incorporate by reference the allegations in paragraphs 1–35.
76. Defendants' false allegations and withholding of exculpatory evidence directly caused Teman's unlawful arrest and detention in *United States v. Teman*, depriving him of his liberty without lawful justification.
77. Defendants acted with intent or reckless disregard for Teman's rights, knowing their actions would lead to his wrongful confinement.
78. As a result, Teman suffered emotional distress, reputational harm, and other damages.

**Count XI: Harassment (Samuel Taub, Avi Goldenberg, Leon Goldenberg, Abi Goldenberg, and John Does 1–20)**

79. Plaintiffs incorporate by reference the allegations in paragraphs 1–35.
80. Defendants Samuel Taub, Avi Goldenberg, Leon Goldenberg, Abi Goldenberg, and John Does 1–20 engaged in a campaign of harassment against Plaintiff Teman by:

a. Creating and using fake email accounts to impersonate Teman or others, sending false and malicious communications to rabbis and community leaders from whom Teman and his family were seeking support for his legal defense and advocacy efforts.

b. Coordinating repeated and targeted false statements to individuals and organizations, including potential donors, to disrupt Teman's fundraising efforts and isolate him within his community.

81. Defendants' actions were intentional, extreme, and outrageous, designed to cause Teman severe emotional distress and financial harm by undermining his ability to fund his legal defense and advocacy.
82. Under New York law, Defendants' conduct constitutes harassment, as it was a willful and malicious effort to intimidate and harm Teman.
83. As a result, Teman suffered severe emotional distress, reputational harm, and financial losses due to disrupted fundraising efforts.

**Count XII: Defamation (Samuel Taub, Avi Goldenberg, Leon Goldenberg, Abi Goldenberg, and John Does 1–20)**

84. Plaintiffs incorporate by reference the allegations in paragraphs 1–35.
85. Defendants Samuel Taub, Avi Goldenberg, Leon Goldenberg, Abi Goldenberg, and John Does 1–20 defamed Plaintiff Teman by making false and defamatory statements, including:

a. Posting false statements in internet comments and other public forums, accusing Teman of criminal conduct, fraud, and professional incompetence, despite knowing these claims were false, as evidenced by withheld documents showing Teman's clear communication of GateGuard's Terms (Exhibit 1 (Page 9)) and Defendants' own misconduct (Exhibit 1 (Pages 15, 20–22)).
b. Sending false communications via fake email accounts to rabbis and community leaders, falsely claiming Teman engaged in fraudulent or criminal behavior, with the intent to harm his reputation and credibility.
c. Making false statements to individuals and organizations from whom Teman and his family were fundraising, asserting that Teman's actions in *United States v. Teman* were criminal and that GateGuard was unreliable, despite evidence of Defendants' own breaches and non-payment (Exhibit 1 (Page 15)).

86. These statements were made with actual malice, as Defendants knew or should have known they were false, given their access to evidence showing Teman's innocence and their own misconduct (Exhibit 1 (Pages 6–10, 13–15, 20–22)).
87. Defendants published these statements to third parties, including rabbis, community leaders, and potential donors, causing harm to Teman's reputation as a recognized community leader and entrepreneur.
88. As a result, Teman suffered reputational harm, loss of fundraising opportunities, emotional distress, and financial losses.

**Count XIII: Malicious Abuse of Process (Simcha D. Schonfeld, Koss & Schonfeld, LLP, Adam Engel, Samuel Taub, Joseph Soleimani, Benjamin Soleimani, Abraham Soleimani, Leon Goldenberg, Abi Goldenberg, Avi Goldenberg)**

89. Plaintiff incorporates by reference the allegations in paragraphs 1–88

90. Defendants Simcha D. Schonfeld, Koss & Schonfeld, LLP, and Adam Engel, as counsel for or in collusion with Samuel Taub, the Soleimanis, and the Goldenbergs, maliciously abused the legal process in civil cases, including *GateGuard, Inc. v. MVI Systems LLC* and *GateGuard, Inc. v. Goldmont Realty Corp.*, by intentionally violating subpoenas and discovery deadlines to withhold exculpatory

evidence, such as communications detailing Defendants' knowledge of Teman's terms and their own breaches, with the ulterior purpose of denying Teman access to evidence that would exonerate him in *United States v. Teman* and undermine their civil defenses.

91. This abuse of process continued despite court orders and deadlines, forcing Teman to file repeated motions to compel and incur substantial additional legal fees, and has prolonged his harm by delaying judicial relief and perpetuating his wrongful conviction.

92. Under New York law, Defendants' willful misuse of discovery processes to achieve an improper objective constitutes malicious abuse of process, as it perverts the judicial system and deprives Teman of a fair opportunity to present exculpatory evidence.

93. The ongoing nature of this abuse, including Judge Engelmayer's alleged ex parte collusion with these Defendants and his failure to consider the evidence for over four years, exacerbates the harm, as does his threats against reporters inquiring about his inaction on witness statements revealing further collusion by Soleimani, Goldenberg, Soon-Osberger, and Hom to hide evidence.

102. As a result, Teman suffered damages, including legal fees, expenses, reputational harm, and continued emotional distress.

**DAMAGES**

94. As a direct and proximate result of Defendants' actions, Plaintiffs have suffered damages, including but not limited to:

    a. **Legal Fees and Expenses**: Costs incurred in filing motions, appeals, and pursuing discovery to uncover withheld evidence, which would not have been necessary absent Defendants' misconduct.

    b. **Financial Losses**: Unpaid contractual fees, lost business opportunities, and loss of competitive advantage due to trade secret theft.

    c. **Reputational Harm**: Damage to Teman's and GateGuard's professional reputation due to false allegations and the criminal case.

      d. **Emotional Distress**: Severe emotional harm to Teman resulting from Defendants' actions, including wrongful prosecution, battery, and unlawful detainment.

      e. **Physical Harm**: Injuries sustained by Teman during his arrest and detainment.

      f. **Loss of Trade Secrets**: Diminution in the value of GateGuard's proprietary information and competitive position due to Defendants' misappropriation.

95. Plaintiffs seek compensatory damages, punitive damages, attorneys' fees, costs, and such other relief as the Court deems just and proper.

---

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that this Court:

    A. Enter judgment in favor of Plaintiffs and against Defendants on all counts.

    B. Award compensatory damages in an amount to be determined at trial, including but not limited to legal fees and expenses incurred in pursuing motions, appeals, and discovery due to Defendants' misconduct, financial losses, and damages for emotional distress and physical harm.

    C. Award punitive damages to deter future misconduct by Defendants.

    D. Set aside any fraudulent conveyances of properties by Defendants Joseph Soleimani, Benjamin Soleimani, Abraham Soleimani, ABJ Properties, and John Does 1–20.

    E. Grant injunctive relief prohibiting Defendants from further withholding evidence, using or disclosing GateGuard's trade secrets, or interfering with GateGuard's contractual rights.

    F. Award attorneys' fees, costs, and expenses incurred in this action.

    G. Grant such other and further relief as the Court deems just and proper.

    H. Plaintiff therefore seeks **(a)** declaratory relief against Paul Engelmayer that such conduct, if it occurred, would violate the Constitution; **(b)** injunctive or mandamus-style relief directing reassignment

or review of affected proceedings; © ..and ordering an independent investigation into Judge Paul A. Engelmayer's alleged ex parte collusion and threats against reporters, with referral to the Judicial Council of the Second Circuit under 28 U.S.C. § 351. and **(d)** any other equitable relief the Court deems proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.

**Dated**: October 24, 2025
**Respectfully submitted,**
s/Ari Teman/
Pro Se
1521 Alton Road, #888, Miami Beach, FL 33139

List of Exhibits

**Exhibit 1**: Motion for Sanctions filed by Ari Teman in *United States v. Teman*, Case No. 1:19-cr-00696-PAE, filed January 6, 2022, including all attached communications and documents (Pages 1–23). This exhibit contains the following key materials:

- **WhatsApp Chats**:
  - Communications between Leon Goldenberg and Jacon Litchfield, including a reference to "bd'e" (Baruch Dayan HaEmet) (Page 5).
  - Chats between Joseph Soleimani and Samuel Taub discussing Teman, *United States v. Teman*, efforts to avoid a paper trail, and interactions with defendants in related civil cases (Pages 6, 22).
  - MVI/ABJ group chat discussing issues with MVI systems, Teman, *United States v. Teman*, a "Teman Suicide Note," and a news article about Teman's arrest (Pages 20–22).
- **Deposition**:
  - Sworn deposition of Leon Goldenberg, admitting he hoped the criminal case against Teman would prevent Teman from sustaining lawsuits against him (Page 7).
- **Emails**:
  - Email from Margaret Crimmins to Bonnie Soon-Osberger, stating 18 Mercer Equities was "legally liable" for GateGuard's contract fees (Page 8).
  - Email from Margaret Crimmins to 18 Mercer Equities shareholders and Gina Hom, outlining dates, amounts, and fees Teman warned about, showing clear communication (Page 9).
  - Email from Joseph Soleimani to Shragie Aranoff, listing issues with MVI intercom systems, contradicting claims that GateGuard's systems were uniquely faulty (Page 17).
  - Email from Samuel Taub to Joseph Soleimani, demanding payment of $10,000 of the $13,000 owed to MVI, with Soleimani's response about wanting a working product (Pages 18–19).
- **Other Communications**:
  - Messages showing Joseph Soleimani owed $13,000 to MVI for over a year and had issues with their systems, indicating a pattern of non-payment similar to that used against GateGuard (Pages 15–16).
  - Communications showing Soleimani reviewed and understood GateGuard's Terms and Conditions before ordering systems, including questions about minimum terms and property sales (Pages 13–14).
  - Statement by Abi Goldenberg, admitting he spoke with the Government and Soleimani about Teman and GateGuard (Page 10).